**Application of Robert M. MARSHECK.**
**Patent Appeal No. 8450.**

United States Court of Customs and Patent Appeals.

Feb. 25, 1971.

J. Arthur Young and Donald J. Quigg, Washington, D. C., L. Malcolm Oberlin, Barthlesville, Okl., James H. Hughes, Washington, D. C., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 2–3 and 9–14 of appellant's application entitled "Olefin Disproportionation."[1] No claims have been allowed.

The invention relates to the production of olefin hydrocarbons by disproportionation. The disproportionation process is described in the specification as follows:

> According to my invention, olefins are converted to desired longer and/or shorter carbon chain products by contacting a first olefin with a disproportionation catalyst in a first disproportionation zone to produce a second olefin lighter than the first olefin and a third olefin heavier than the first olefin, contacting the third olefin with a disproportionation catalyst in a second disproportionation zone to produce additional quantities of the first olefin and a fourth olefin heavier than the third olefin, separating quantities of the first olefin from effluent from the second disproportionation zone to feed the first disproportionation zone and separating quantities of the third olefin from effluent from the first disproportionation zone to feed the second disproportionation zone. The process of my invention finds particular usefulness when a plurality of disproportionation zones are provided and necessary separations accomplished to produce a variety of olefin streams which are fed to the disproportionation zone best suited for their further disproportionation and wherein a plurality of products are available to be withdrawn at various points.

When ethylene is not a desired product, it can be converted into a higher olefin by dimerization or polymerization. Likewise, when the heavier olefins produced are not desired products, they can be cracked to produce lighter olefins. These olefins can be fed back into the system if desired.

Claim 2 is illustrative:

> 2. A process for the disproportionation of olefin hydrocarbons, which comprises the steps of:
>
> contacting a first olefin with a disproportionation catalyst in a first disproportionation zone under conditions to produce a first disproportionation product comprising a second olefin lighter than said first olefin, a third olefin heavier than said first olefin, and any unconverted quantities of said first olefin;
>
> contacting at least a portion of said third olefin with a disproportionation catalyst in a second disproportionation zone to produce a second disproportionation product, comprising an additional quantity of said first olefin, a fourth olefin heavier than said third

1. Serial No. 360,938 filed April 20, 1964.

olefin, and any unconverted quantities of said third olefins;

separating at least a portion of said quantity of said first olefin from said second disproportionation product, and passing said portion of said quantity of said first olefin to said first disproportionation zone; and

recovering a desired product olefin.

Claim 3 is drawn to the same process as claim 2, but adds a third disproportionation zone. The lighter olefin produced in the third zone may be recycled to the second zone. Claims 9–14 add to claims 2 and 3 the steps of converting ethylene to a higher olefin which is fed back into the system and/or cracking a higher olefin product to produce lower molecular weight olefins which are fed back to the system.

The references relied upon are:

| | | |
|---|---|---|
| Mattox | 2,383,206 | August 21, 1945 |
| Bailey et al. (Bailey) | 2,581,228 | January 1, 1952 |
| Banks | 3,261,879 | July 19, 1966 |
| Sherk | 3,296,330 | January 3, 1967 |

Sherk discloses a process for the disproportionation of olefin hydrocarbons. Sherk states that:

\* \* \* the disproportionation of an acyclic olefin hydrocarbon is accomplished by a continuous two-step process in which an acyclic olefin hydrocarbon is contacted with a first amount of disproportionation catalyst, the product separated into relatively high and low molecular weight fractions, the relatively low molecular weight fraction recovered and at least a portion of the relatively high molecular weight fraction contacted with a second amount of disproportionation catalyst.

Sherk also discloses that "[u]nconverted feed materials or products not in the desired range can be recycled." Sherk, in his illustrative embodiment, indicates what he means by "recycled". That is, it is stated that olefins from the first disproportionation zone which are outside the desired product range may be recycled back through the first disproportionation zone. Likewise, the product of the second disproportionation zone may be fed into the first disproportionation zone. Finally, Sherk discloses that $C_5$ to $C_{11}$ (intermediate molecular weight) olefins produced in the second disproportionation zone may be recycled through the second disproportionation zone.

Banks also discloses disproportionation of olefins. The board found Banks cumulative to Sherk and declined to discuss it further. Because of this, both parties felt it unnecessary to consider Banks, as do we.

Bailey shows converting a low molecular weight olefin, such as ethylene, into heavier molecular weight olefins by catalytic polymerization.

Mattox discloses producing lighter olefins by the catalytic cracking of heavier olefins.

The examiner rejected claims 2–3 under 35 U.S.C. § 103 as unpatentable over Banks or Sherk. The board affirmed, and in addition stated that it regarded Sherk as applicable to claim 2 under 35 U.S.C. § 102. Appellant contends that there are several distinctions between the disclosure of Sherk and claim 2, including the fact that Sherk recycles the unconverted feed material (for example, propylene) from the first disproportionation zone and does not recycle propylene from the second disproportionation zone.

■■ We agree with appellant that claim 2 is not anticipated by Sherk; however, we will sustain the rejection of claims 2–3 as unpatentable over Sherk under 35 U.S.C. § 103 since we believe the differences that do exist would be obvious to one of ordinary skill in the art. Sherk discloses a disproportionation process having two disproportionation zones, and it is stated that olefins produced in the first zone which are of relatively high molecular weight are fed into the second zone. While in the illus-

trative embodiment the olefins produced in the first zone which are fed into the second zone are of intermediate molecular weight, they are generally heavier than the feed material for the first zone, and Sherk discloses that included in the intermediate fraction is the "heavier olefin" which appellant feeds from the first zone into the second. Sherk also suggests recycling olefins produced in the first zone and/or the second zone which are "not in the desired range." These recycled olefins are used as feed materials in whichever disproportionation zone is appropriate. From this teaching, we think it obvious to one skilled in the art to recycle the separated relatively low molecular weight fraction produced in the second zone for further disproportionation in the first zone. We also agree with the board that expanding the Sherk process to more than two zones, such as to three zones as in claim 3, is an obvious extension of that process. Sherk clearly teaches the skilled artisan the interrelationship necessary for the utilization of two or more disproportionation zones.

Likewise, we agree that it would be obvious to one of ordinary skill in the art that lighter olefins of Sherk's process which are not in the desired range may be converted into heavier ones (claims 9, 11, and 13–14) by the process of Bailey, and that heavier olefins which are not in the desired range may be cracked to produce lighter olefins (claims 10, 12, and 13–14) by the Mattox process. Further treating the olefins from either of Sherk's disproportionation zones which are not of the desired molecular weight to produce olefins of a desired molecular weight which may be fed back into the system seems to us to reasonably suggest itself from a consideration of the cited prior art taken as a whole. In re Siebentritt, 372 F. 2d 566, 54 CCPA 1083 (1967).

Therefore, the decision of the board is affirmed.

Affirmed.